John Allen **GAULDING**, et
al., Petitioners,
v.
The **CELOTEX CORPORATION**, et
al., Respondents.
No. C–7615.
Supreme Court of Texas.
June 7, 1989.

Frederick M. Baron and Brent M. Rosenthal, Dallas, for petitioners.

Elizabeth M. Thompson, Houston, for Celotex Corp.

Gary D. Elliston and Kevin J. Cook, of Dehay & Blanchard, Dallas, for Nat. Gypsum Co., U.S. Gypsum Corp., Keene Corp. and GAF Corp.

GONZALEZ, Justice.

This asbestos products liability case is one of first impression in Texas. Petitioners concede that they are unable to identify the specific manufacturer of a product and therefore seek to impose collective liability against a number of possible tortfeasors. Suit was brought by the survivors of Ethel Gaulding, deceased, against Celotex Corporation, National Gypsum Company, United States Gypsum Company, Keene Corporation, and G.A.F. Corporation, five alleged manufacturers of asbestos-containing board. The petitioners claim that the board was defective and unreasonably dangerous and was marketed without an adequate warning alerting users of the hazards of asbestos exposure. They further claim the board was negligently designed and labeled. The trial court granted summary judgment in favor of the defendants and the court of appeals affirmed. 748 S.W.2d 627. We affirm the judgment of the court of appeals.

Petitioners John Gaulding, Carolyn Wylie, and Barbara Pryor are the surviving adult children of Ethel Gaulding. They allege that their mother died from mesothelioma, which is cancer of the lining of the lungs, caused by exposure to asbestos. Mrs. Gaulding's exposure to asbestos occurred in June of 1956 and thereafter when her husband built a vanity cabinet out of asbestos-containing board. The board had been purchased at a salvage yard which is no longer in existence. Mrs. Gaulding died in March of 1984, over twenty-eight years after her initial exposure to the board.

In their sole point of error, the petitioners contend that the court of appeals erred in affirming the trial court's summary judgment because under the doctrines of joint and several liability and *res ipsa loquitur,* and the various theories of collective liability, "alternative liability," "concert of action," "enterprise liability," and "market share liability," genuine issues of material fact exist in this case.

■ A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury. *See Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 376 (Tex.1978); *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1094 (5th Cir.1973); *Flatt v. Johns–Manville Sales Corp.,* 488 F.Supp. 836, 838 (E.D.Tex.1980); *Gray v. United States,* 445 F.Supp. 337, 338 (S.D.Tex.1978); J. Sales, *Product Liability Law in Texas,* 365–66, n. 1 (1985). In *Borel,* it was uncontroverted that the plaintiff was injured from inhaling asbestos dust and that he was in fact exposed to the products of all of the defendants. *Borel,* 493 F.2d at 1094. In the case before us, however, it is undisputed that Mrs. Gaulding's survivors have not established who manufactured the asbestos board used in the Gaulding home. Instead, they named the five respondent companies as defendants which they claim "dominated the market of asbestos-containing wallboard" at the time of Mrs. Gaulding's exposure. The petitioners further admit that they have not joined all possible tortfeasors as defendants.

Petitioners contend that since Texas courts have adopted joint and several liability and *res ipsa loquitur,* the collective liability theories they advance should also be adopted. Concerning joint and several liability, the petitioners rely on *Landers v. East Texas Salt Water Disposal Co.,* 151 Tex. 251, 248 S.W.2d 731 (1952). In *Landers,* the plaintiff was the owner of a small lake which had been drained, cleaned and stocked with fish. Two defendants, an oil company and a pipeline company, allegedly permitted salt water and oil to escape from the pipeline into the lake, killing the fish. The plaintiff sought to enjoin further pollution of his lake and to recover damages from these two defendants. Based on the defendants' pleas of misjoinder, the trial court ordered a severance so that each defendant could be tried separately. When the plaintiff refused to replead separate claims against each defendant, the trial court dismissed the suit, and the court of appeals affirmed the judgment of the trial court. This court reversed and remanded the case to the trial court, concluding that the plaintiff had properly pled a claim for joint and several liability against alleged tortfeasors whose separate acts produced the indivisible injury. Unlike in the instant case, there it was unequivocally alleged that each of the two defendants contributed to the overall injury. *See Thompson v. Johns–Manville Sales Corp.,* 714 F.2d 581, 582 (5th Cir.1983).

■ The petitioners' reliance on *res ipsa loquitur* is also misplaced. This doctrine is applicable only when the following two factors are present: (1) the character of the injury is such that it would not have occurred in the absence of negligence; and (2) the instrumentality which caused the injury is shown to have been under the sole management and control of the defendant. *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex.1986); *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 251 (Tex.1974). Inherent in the latter factor is the requirement that the defendant be proved to have some causal connection with the plaintiff's injury. In a situation such as the one before us, when the petitioners admit they cannot identify the responsible tortfeasor, *res ipsa* has no applicability.

■ The petitioners further assert that collective liability is supported by the Texas Legislature's exemption of toxic torts from recent reform of joint and several liability. *See* Tex.Civ.Prac. & Rem.Code Ann. § 33.013(c)(3) (Vernon Supp.1989). However, this provision specifically states, "This section *does not* create a cause of action." *Id.* § 33.013(d) (emphasis added). We will now discuss the collective liability theories advanced by petitioners.

## ALTERNATIVE LIABILITY

■ Alternative liability, initially adopted by the California Supreme Court in *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1

(1948), relaxes the plaintiff's burden of identifying the actual tortfeasor and thus may allow the plaintiff to prevail when the traditional rules of causation would prevent recovery.[1] Under this theory of liability, which is embodied in the Restatement of the Law of Torts, Second, when independent acts of negligence are simultaneously committed by two or more tortfeasors and only one act results in injury, the plaintiff is relieved of his burden of proof. Restatement (Second) of Torts § 433B (1963). The burden shifts to the defendants to exculpate themselves. A crucial element to alternative liability is that *all* possible wrongdoers must be brought before the court. *Abel v. Eli Lilly & Co.*, 418 Mich. 311, 343 N.W.2d 164, 174, *cert. denied*, 469 U.S. 833, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984); *Starling v. Seaboard Coast Line R.R.*, 533 F.Supp. 183, 188 (S.D.Ga.1982). When a plaintiff fails to join all possible defendants, alternative liability does not apply. *Goldman v. Johns–Manville Sales Corp.*, 33 Ohio St.3d 40, 514 N.E.2d 691, 697 (1987); *Vigiolto v. Johns–Manville Corp.*, 643 F.Supp. 1454, 1457 (W.D.Pa. 1986), *aff'd*, 826 F.2d 1058 (3d Cir.1987). Because the petitioners in the instant case concede they have not joined all possible tortfeasors as defendants, alternative liability is not applicable.

### CONCERT OF ACTION

Under concert of action, those who are in pursuit of a common plan or design to commit a tortious act and actively participate in it or lend aid, cooperation, or encouragement to the wrongdoer are equally liable. *Prosser and Keeton on the Law of Torts* § 46 (W. Keeton 5th ed. 1984). This theory developed in cases in which innocent bystanders were injured during illegal drag races. *See, e.g., Bierczynski v. Rogers,* 239 A.2d 218 (Del.1968); *Hood v. Evans,* 106 Ga.App. 360, 126 S.E.2d 898 (1962). Concert of action is also embodied in the Restatement of the Law of Torts. A common plan, design, or express agreement alone will not result in concert of action

liability; the defendants must participate in acts of a tortious character in carrying out the plan or agreement. Restatement (Second) of Torts § 876 comment b (1977); J. Sales at 379.

Most jurisdictions that have considered this theory have rejected its application to latent disease product liability cases which involve numerous manufacturers. In *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, *cert. denied,* 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980), the California Supreme Court rejected concert of action in a diethylstilbesterol (DES) case and concluded that this theory requires more than mere communication and cooperation among the members of a particular industry. It was held that when manufacturers customarily rely on the experience of others producing the same product, such conduct will not be construed as even a tacit understanding to engage in tortious activity. *Id.,* 163 Cal. Rptr. at 140, 607 P.2d at 932. *But see Bichler v. Eli Lilly & Co.,* 79 A.D.2d 317, 436 N.Y.S.2d 625 (1981), *aff'd,* 55 N.Y.2d 571, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982) (modified version of concert of action in a DES case was allowed to be submitted to a jury when the manufacturers took part in "conscious parallel" conduct). *Cf. Collins v. Eli Lilly & Co.,* 116 Wis.2d 166, 342 N.W.2d 37, *cert. denied,* 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984) (allegations did not support theory that defendants tacitly agreed to produce and market DES without warning of dangers).

The petitioners rely on a recent Delaware Supreme Court case, *Nicolet, Inc. v. Nutt,* 525 A.2d 146 (Del.1987). In *Nicolet,* it was held that a cause of action exists against a party whose asbestos products did not cause the purported injury, but who allegedly conspired with other asbestos manufacturers to intentionally misrepresent and suppress relevant information regarding the health hazards of asbestos. There has been no such allegation nor summary judgment proof in the present action.

---

1. In *Summers,* the plaintiff was struck in the eye when two hunters negligently fired their shotguns. Because the defendants fired simultaneously, the plaintiff was unable to identify which defendant was actually responsible for the injury. The California Supreme Court shifted the burden of proof to the defendants to offer evidence to determine which one caused the injury. *Summers,* 199 P.2d at 4.

## ENTERPRISE LIABILITY

Under enterprise liability, each manufacturer is held accountable because of adherence to an industry-wide standard. This theory was originally formulated in *Hall v. E.I. DuPont de Nemours & Co.*, 345 F.Supp. 353 (E.D.N.Y.1972). In *Hall,* the plaintiffs were unable to identify the specific manufacturer of blasting caps which exploded and injured a number of children. The plaintiffs brought suit against all six American blasting cap manufacturers and their trade association. The court held that enterprise liability will apply when it is shown that the defendants were jointly aware of the risks at issue and possessed a joint capacity to reduce or affect those risks. *Id.* at 378. In order to prevail, the plaintiff need not identify which of the defendant-manufacturers made the injury-causing product, so long as it is demonstrated that it is more probable than not that an injury was caused by a product manufactured by one of the named defendants. *Id.* at 379.

Enterprise liability as embodied in *Hall* has been rejected by virtually all other jurisdictions that have considered this concept. *Mulcahy v. Eli Lilly & Co.,* 386 N.W.2d 67, 70–71 (Iowa 1986); *Martin v. Abbott Laboratories,* 102 Wash.2d 581, 689 P.2d 368, 380 (1984); *Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241, 245 (Mo.1984); *Sindell,* 163 Cal.Rptr. at 143, 607 P.2d at 935; *Cummins v. Firestone Tire & Rubber Co.,* 344 Pa.Super. 9, 495 A.2d 963, 971 (1985); *Namm v. Charles E. Frosst & Co.,* 178 N.J.Super. 19, 427 A.2d 1121, 1129 (1981). The prominent reason for declining recovery under this theory is its limited application to cases which involve only a small number of manufacturers in a highly centralized industry. The *Hall* court recognized this limitation and stated "[w]hat would be fair and feasible with regard to an industry of five or ten producers might be manifestly unreasonable if applied to a decentralized industry composed of thousands of small producers." *Hall,* 345 F.Supp. at 378. Another reason some courts have rejected enterprise liability is the inability to prove the defendants collectively controlled their conduct by jointly imposed safety standards. *Mulcahy,* 386

N.W.2d at 71; *Sindell,* 163 Cal.Rptr. at 143, 607 P.2d at 935; *Cummins,* 495 A.2d at 970–71.

██ The petitioners in the instant case have failed to establish the criteria for imposing enterprise liability. There is no proof that it is more probable than not that Mrs. Gaulding's injury was caused by board manufactured by one of the five defendants. Furthermore, there is no allegation nor evidence that the risks inherent in asbestos board products were jointly controlled by the defendants. Thus, we decline to apply this theory to the case before us.

## MARKET SHARE LIABILITY

██ The final theory urged by petitioners is market share liability. In a DES case, the California Supreme Court first applied this theory by fashioning an apportionment of liability based on the relative market share of the defendant manufacturers. *Sindell,* 163 Cal.Rptr. 143, 607 P.2d 924. The *Sindell* approach requires that a plaintiff join manufacturers of a substantial share of the DES produced or marketed in the relevant geographical area and prove a prima facie case on every element except identification of the direct tortfeasor. At that point, the burden shifts to the defendants to prove that they did not cause the plaintiff's injury. If a defendant is unable to do so, then it is held liable for a market share percentage of the plaintiff's damages. Recently, the California court further explained its application of market share liability in *Brown v. Superior Court,* 44 Cal.3d 1049, 245 Cal.Rptr. 412, 751 P.2d 470 (1988). Other courts have also applied variations of market share liability. *See Hymowitz v. Eli Lilly & Co.,* 73 N.Y.2d 487, 541 N.Y.S.2d 941, 539 N.E.2d 1069 (1989) (WESTLAW); *Collins v. Eli Lilly Co.,* 116 Wis.2d 166, 342 N.W.2d 37, *cert. denied,* 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984); *George v. Parke–Davis,* 107 Wash.2d 584, 733 P.2d 507 (1987); *Martin v. Abbott Laboratories,* 102 Wash.2d 581, 689 P.2d 368 (1984); *Shackil v. Lederle Laboratories,* 219 N.J.Super. 601, 530 A.2d 1287, *appeal granted,* 537 A.2d 1304 (N.J.1987).

Based on the particular facts of this case, we will not apply market share liabili-

ty or any variation of it. It is undisputed that the asbestos board to which Gaulding was exposed was purchased at a salvage yard. There is no way to know whether this product was initially sold in Texas or whether it was placed into the stream of commerce someplace far away. Conceivably, the board could have been manufactured in some distant state during a time period years earlier than the time that Gaulding's husband purchased it. Ultimately, the board was discarded by someone and made its way to the salvage yard. However, the practical impossibility of determining where or when the product was marketed makes insurmountable the problem of identifying the defendants' relevant market shares. We conclude that no variation of market share liability could be applied rationally and fairly on the facts of this case. We express no opinion on the question of fungibility in this case.

### CONCLUSION

We are not to be construed as approving or disapproving alternative liability, concert of action, enterprise liability, or market share liability in an appropriate case. We do, however, hold that these theories do not apply to the facts of this case. Consequently, as the respondent companies have shown the inapplicability of the collective liability theories to the facts of this case, summary judgment in their favor was proper. For the above reasons, the judgment of the court of appeals is affirmed.