COURT OF APPEALS















 
 
 
 
  
  
 
 
 
 




 

 

 

 

 

 

COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 

 




 
 
  
 QUIGLEY COMPANY, INC.,
  
                             Appellant,
  
 v.
  
 MIGUEL AGUSTIN CALDERON,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-01-00346-CV
  
 Appeal from the
  
 168th Judicial District Court
  
 of El Paso County, Texas
  
 (TC#2000-1703)
 
 




 

 

M E M O R A N D U M 
O P I N I O N

 

This is an appeal from a personal
injury suit.  For the reasons stated, we
affirm in part and reverse and render in part. 

I.  SUMMARY OF THE
EVIDENCE








Appellee, Miguel Agustin Calderon, began
working at the Phelps-Dodge copper refinery in El Paso in 1954.  While at Phelps-Dodge, Appellee
worked as a laborer, helper, mechanic, welder, pipefitter,
boiler maker, insulator, brick layer, blacksmith, sand blaster, and
painter.  He was exposed to Insulag, an insulating
cement that included asbestos, almost daily during the 1950=s and 1960=s. 
Appellant, Quigley Company, Inc. produced Insulag.  Insulag was
a dry, powdered product that produced a dust when poured into wheelbarrows to
be mixed with water.  Appellee
worked with other asbestos products, including Featherlite
pipecovering and gaskets.  However, he described Insulag
as the main product he used as an insulator. 
He retired in 1994 at the age of 62 after almost 40 years of service. 

In October, 2000, Appellee
was diagnosed with asbestosis.  Despite
undergoing heart bypass surgery and angioplasty, Appellee
continues to experience shortness of breath. 
Dr. Ernesto Bondarevsky, who examined Appellee, testified that the main symptom of asbestosis is
shortness of breath or difficult breathing. 
He testified that in addition to shortness of breath, Appellee had other respiratory symptoms, such as cough and
expectoration, for about fifteen (15) years. 
Dr. Bondarevsky=s diagnosis of asbestosis relied
primarily on Appellee=s exposure to asbestos for over forty
(40) years. 








Appellee filed suit in May, 2000, against
numerous defendants for his asbestos-related illness.  The claims against all but Appellant, Quigley
Company, Inc., were settled and dismissed.  Thereafter, trial commenced against
Appellant.  The jury returned its verdict
in Appellee=s favor, awarding $3,055,000 in
compensatory damages and $15,000,000 in punitive damages.  The trial court later signed a judgment in Appellee=s favor.  After offset
of the settlement credit and application of the statutory cap, the judgment
awarded $2,894,757.50 in compensatory damages and $750,000 in punitive
damages.  Appellant then filed its motion
for judgment notwithstanding the verdict, motion to disregard certain jury
findings, and motion for new trial or in the alternative, for remittitur.  After a
hearing on Appellant=s motions, the trial court vacated its prior judgment and
disregarded the jury=s award of damages for fear of cancer finding it was based on
legally and factually insufficient evidence. 
Appellant=s motion for judgment notwithstanding the verdict, motion to
disregard certain jury findings, and motion for new trial or in the
alternative, for remittitur were denied in all other
respects.  The court then signed a
modified judgment awarding Appellee $1,894,757.50 in
compensatory damages and $750,000 in punitive damages.  This appeal follows.

II.  DISCUSSION

Appellant brings five issues
challenging the legal and factual sufficiency of the evidence.  We begin with a discussion of the standard of
review. 

A.  Legal and Factual Insufficiency

In considering a Ano evidence@ legal insufficiency issue, we
consider only the evidence and inferences that tend to support the jury=s findings and disregard all evidence
and inferences to the contrary.  See Weirich v. Weirich, 833
S.W.2d 942, 945 (Tex. 1992); Pool v. Ford Motor Co., 715 S.W.2d 629, 634‑35
(Tex. 1986); Garza v. Alviar, 395 S.W.2d 821,
823 (Tex. 1965); Texas Tech Univ. Health Sciences Ctr. v. Apodaca, 876 S.W.2d 402, 411-12 (Tex. App.--El Paso
1994, writ denied).  If more than a
scintilla of evidence supports the questioned finding, the Ano evidence@ issue fails.  See Tseo
v. Midland Am. Bank, 893 S.W.2d 23, 25 (Tex.
App.--El Paso 1994, writ denied); Hallmark v. Hand, 885 S.W.2d 471, 474 (Tex. App.--El Paso 1994, writ
denied).  








An Ainsufficient evidence@ or factual insufficiency issue
involves a finding that is so against the great weight and preponderance of the
evidence as to be manifestly wrong.  The
test for factual insufficiency issues is set forth in In
re King=s Estate, 150 Tex. 662, 244 S.W.2d 660, 661-62
(1951).  In reviewing an issue assert­ing
that a finding is against the great weight and preponder­ance of the evi­dence,
we must consider all of the evidence, both the evidence which tends to prove
the existence of a vital fact, as well as evidence which tends to disprove its existence. 
It is for the jury to determine the weight to be given to the testimony
and to resolve any conflicts in the evidence. 
See Carrasco v. Goatcher, 623 S.W.2d
769, 772 (Tex. App.--El Paso 1981, no writ). 
The jury=s finding should be sustained if there is some probative
evidence to support it and provided it is not against the great weight and
preponderance of the evidence.  See
id.  Thus, we cannot substitute our
judgment for that of the fact finder even if we find a fact contrary to that found
by the jury.  If, however, the verdict is
so contrary to the great weight and preponderance of the evidence as to be
manifestly unjust, the issue should be sustained. 

B.  Substantial Factor

In Issue No. One, Appellant asserts that the
evidence is legally and factually insufficient to establish that its conduct or
its product is a substantial factor in bringing about Appellee=s asbestos-related disease.  Appellee submitted
two causes of action to the jury: negligence and  marketing defect. 








Negligence requires a showing of
proximate cause, while products liability causes of action require a showing of
producing cause.  Purina
Mills, Inc. v. Odell, 948 S.W.2d 927, 935 (Tex.
App.--Texarkana 1997, writ denied).  Producing cause differs from proximate cause.
Producing cause is an efficient, exciting, or contributing cause that, in a
natural sequence, produces the injuries or damages complained of and but for
which the injuries would not have occurred. 
Union Pump Co. v. Allbritton,
898 S.W.2d 773, 775 (Tex. 1995); Odell,
948 S.W.2d at 935-36.  Producing cause requires a lower
burden than proximate cause, because foreseeability
is not required.  Gen.
Motors Corp. v. Saenz, 873 S.W.2d 353, 357 (Tex. 1993); Odell,
948 S.W.2d at 936.  Both proximate cause and producing cause
require causation in fact.  Odell, 948 S.W.2d at 936. 
Causation in fact requires that the defendant=s conduct be a substantial factor in
bringing about the plaintiff=s damages.  Allbritton, 898 S.W.2d at
775; Odell, 948 S.W.2d at 936. 
Causation must be based on a reasonable probability, not just mere
possibility.  Odell, 948 S.W.2d at 936. 
Absolute certainty is not required, nor must the plaintiff exclude every
other possibility.  Id.  The only requirement to a finding of ultimate
fact is proof of a causal connection beyond the point of conjecture or mere
possibility.  Id.

A fundamental principle of
traditional product liability law is that the plaintiffs must prove that the
defendant supplied the product which caused their injury.  Gaulding v. Celotex Corp., 772 S.W.2d 66,
68 (Tex. 1989); Celotex Corp. v. Tate, 797 S.W.2d 197, 203
(Tex. App.--Corpus Christi 1990, writ dism=d by agr.). 
If there is sufficient evidence presented by Appellees
showing that Appellant supplied any of the asbestos to which Appellees were exposed, then Appellees
have adequately met their burden of proof. 
Tate, 797 S.W.2d at 204.








The evidence established that Appellee was exposed on a daily basis to Insulag during the 1950=s and 1960=s and that Appellant produced Insulag.  Insulag was the main product Appellee  used as an insulator.  Insulag
produced a dust when poured into wheelbarrows to be mixed with water and
contained 9.7 percent asbestos.  Dr.
Richard Lemen testified that asbestos fibers, such as
those found in Insulag, are capable of being
breathed before they are

mixed with water.  Dr. Lemen also
testified that 9.7 percent is a significant amount of asbestos in a dry powder
fiber product. 

Furthermore, Appelllee
suffers from shortness of breath.  Dr. Bondarevsky testified that the main symptom of asbestosis
is shortness of breath or difficult breathing. 
He testified that in addition to shortness of breath, Appellee had other respiratory symptoms, such as cough and
expectoration, for about fifteen (15) years. 
Dr. Bondarevsky=s diagnosis of asbestosis relied
primarily on Appellee=s exposure to asbestos for over forty
(40) years.  Appellee=s scarring of the lungs is an
interstitial scarring, which Drs. Bondarevsky and Lemen testified is caused by exposure to asbestos
dust.  Dr. Bondarevsky
stated that the scarring is in both lungs and is mainly in the mid or lower
fields, and that the pattern is consistent with asbestosis.  Finally, Dr. Bondarevsky
testified that Appellee=s lung disease was not caused or
produced by his coronary artery bypass graft. 

In examining only the evidence that
supports the jury=s verdict, we find there is more than a scintilla of evidence
to establish that Appellant=s conduct or its product is a substantial factor in bringing
about Appellee=s asbestos-related disease.  This portion of Issue No.
One is overruled.  We now examine the
factual sufficiency of the evidence.








The evidence established that Appellee worked with other asbestos products, including Featherlite pipecovering and
asbestos gaskets.  He also worked with Kromag and Q-Chrome mixing muds
when doing brick work.  Appellee was also exposed to smoke and dust while at
Phelps-Dodge.  Appellee
underwent heart bypass surgery and angioplasty, which could contribute to his
shortness of breath.  Interstitial lung
disease has approximately 100 other causes. 
Dr. Lemen stated it was Apossible@ that 65percent of all diagnosed
cases of interstitial lung disease have no known cause. 

In examining all of the evidence, we
find that the jury=s finding is not against the great weight and preponderance
of the evidence.  Issue
No. One is overruled in its entirety.

C.  Mental Anguish and Physical Pain Award

In Issue No. Two, Appellant argues that the
evidence is legally and factually insufficient to establish that Appellee sustained compensable mental anguish in the past
or future for an asbestos-related disease. 
In Issue No. Three, Appellant asserts that the
evidence is legally and factually insufficient to establish that Appellee sustained any physical pain in the past or future,
in the form of shortness of breath, due to his alleged exposure to Insulag.

AWhen a damage issue is submitted in
broad form, ascertaining the amount the jury awarded for each element of
damages is difficult, if not impossible.@ 
Wal-Mart Stores, Inc.
v. Garcia, 30 S.W.3d 19, 24 (Tex. App.--San Antonio 2000, no pet.) (citing Brookshire
Bros., Inc. v. Lewis, 997 S.W.2d 908, 921-22 (Tex. App.--Beaumont 1999,
pet. denied)).  AAn Appellant who seeks to challenge a
multi-element damage award on appeal must address each element and show the
evidence is insufficient to support the entire award.@ 
Id at 24.  (citing Lewis,
997 S.W.2d at 922).  If an Appellant
fails to address an element of damages, the Appellant waives the sufficiency
challenge.  Id.  AIf there is just one element that is
supported by the evidence, the damages award will be affirmed if it is
supported by the evidence.@  Greater
Houston Trans. Co. v. Zrubeck, 850 S.W.2d 579,
589 (Tex. App.--Corpus Christi 1993, writ denied).

There is no Adirect evidence of the nature,
duration, or severity of [plaintiffs=] anguish, thus establishing a
substantial disruption in the plaintiffs= daily routine,@ or other evidence of A >a high degree of mental pain and
distress= that is >more than mere worry, anxiety,
vexation, embarrassment, or anger.=@ 
Saenz, 925 S.W.2d at 614.  The evidence is legally and factually
insufficient.  We therefore sustain Issue
No. Two. 
However, since Appellant is challenging a multi-element damage award, we
next examine the record for evidence of physical pain.  If there is just one element that is
supported by the evidence, the damages award will be affirmed.

The evidence established that Appellee suffers from shortness of breath and he knows his
asbestosis is incurable.  Dr. Bondarevsky testified that the main symptom of asbestosis
is shortness of breath or difficult breathing. 
He stated that Appellee experiences shortness
of breath after climbing one flight of stairs. 
He testified that in addition to shortness of breath, Appellee had other respiratory symptoms, such as cough and
expectoration, for about fifteen (15) years. 
Dr. Bondarevsky also testified that Appellee suffers from scarring of the lungs, which is an
interstitial scarring.  Appellee=s chest X-ray showed a moderate scarring of the lungs and
moderate pleural thickening on the left side. 
Dr. Bondarevsky testified that a patient with
damaged lungs, such as Appellee=s, is susceptible to other
complications such as infections, bronchitis, and the flu or common cold. 








In examining only the evidence that
supports the jury=s verdict, we find there is more than a scintilla of evidence
to establish that Appellee suffers from physical
pain.  This portion of
Issue No. Three is overruled.  We
now examine the factual sufficiency of the evidence.       Appellee=s dizziness and shortness of breath
was first diagnosed as being heart-related. Appellee
underwent heart bypass surgery and angioplasty, which could contribute to his
shortness of breath.  Dr. Bondarevsky stated that Appellee=s pleural thickening could be caused
by either his asbestos disease or by his previous heart surgery.  In examining all of the evidence, we find
that the jury=s finding is not against the great
weight and preponderance of the evidence. 
Issue No. Three is overruled in its entirety.

D.  Physical Impairment Award








In Issue No. Four, Appellant argues that the
evidence is legally and factually insufficient to establish that Appellee sustained any compensable physical impairment in
the past or future.

Physical impairment is an element of
damages that extends beyond loss of earning capacity and beyond any pain and
suffering, to the extent that it produces a separate loss that is substantial
or extremely disabling.  Blankenship v. Mirick, 984 S.W.2d
771, 777 (Tex. App.--Waco 1999, pet. denied); Peter v. Ogden Ground Serv., Inc., 915 S.W.2d 648, 650 (Tex. App.--Houston
[14th Dist.] 1996, no writ). 
Therefore, even proof that one is entitled to compensatory damages for
pain and suffering, or for lost wages, does not automatically entitle one to
compensation for physical impairment. 
The party claiming such damages bears the burden of proving a
compensable injury.  However, there is no
mathematical standard for the determination of the money damages a jury may
award for physical impairment, and the jury may assess those damages in its
discretion.  N. Am.
Refractory Co. v. Easter, 988 S.W.2d 904, 912 (Tex. App.--Corpus Christi
1999, pet. denied).  Once a
plaintiff establishes that physical impairment exists, that plaintiff need not
establish a dollar amount corresponding to that impairment.

The evidence establishes that Appellee knows his asbestosis is incurable.  He testified that he walks slowly, runs out
of energy, and becomes short of breath in Aabout three or four seconds.@ 
Dr. Bondarevsky testified that a patient with
damaged lungs, such as Appellee=s, is susceptible to other complications
such as infections, bronchitis, and the flu or common cold.  He also testified that the main symptom of
asbestosis is shortness of breath or difficult breathing.  He stated that Appellee
experiences shortness of breath after climbing one flight of stairs.  He testified that in addition to shortness of
breath, Appellee had other respiratory symptoms, such
as cough and expectoration, for about fifteen (15) years.  








Dr. Bondarevsky
also testified that asbestosis is a progressive disease that may get worse over
many years and can cause death.  He
stated that many patients with asbestosis progress to respiratory failure and
death.  He testified that Appellee is going to get Asicker and sicker@ and Aworse and worse.@ 
When asked about the progressive nature of the disease, he testified
that patients notice difficulty breathing on doing certain excessive activities
and they notice they can not do the things they could before.  He stated that the patients become more and
more limited and rely on other people to help with certain things.  The patients may become bedridden or chair or
wheelchair ridden.  There comes a point
where the patients cannot even eat or talk, and they become malnourished and
are required to use a ventilator to breathe. 

Furthermore, Dr. Lemen
testified that asbestosis is a progressive disease that is Aa slow form of suffocation@ and Aa progressive shortness of breath.@ 
He also testified that eventually, a person with severe asbestosis needs
an oxygen tank to breath and can only disconnect long
enough to get up and go to the bathroom. 
He stated that a person that develops asbestosis is going to die, more
likely than not, from an asbestos-related disease, whether it be the asbestosis
or an asbestos-related cancer. 

In examining only the evidence that
supports the jury=s verdict, we find there is more than a scintilla of evidence
to establish that Appellee sustained compensable
physical impairment in the past or future. 
This portion of Issue No. Four is
overruled.  We now examine the factual
sufficiency of the evidence.

Dr. Bondarevsky
testified that Appellee=s pulmonary capacity had not yet
reached a level to cause any impairment that would be measurable on his
pulmonary function studies.   In
examining all of the evidence, we find that the jury=s finding is not against the great
weight and preponderance of the evidence. 
Issue No. Four is overruled in its entirety.

E.  Malice








In Issue No. Five, Appellant asserts that the evidence
is legally and factually insufficient to establish, by clear and convincing
evidence, that Appellee=s asbestos-related disease resulted
from any malice under Chapter 41 of the Texas Civil Practice and Remedies
Code.  To recover exemplary damages, the
plaintiff must prove by clear and convincing evidence that

 the harm resulted
from malice.  Tex. Civ. Prac. & Rem. Code Ann. '' 41.003(a)(2)
(Vernon 1997).  Malice is defined as: 

(A) a specific intent by the
defendant to cause substantial injury to the claimant; or

(B) an act or omission:

(i) which
when viewed objectively from the standpoint of the actor at the time of its
occurrence involves an extreme degree of risk, considering the probability and
magnitude of the potential harm to others; and

(ii) of which the actor has
actual, subjective awareness of the risk involved, but
nevertheless proceeds with conscious indifference to the rights, safety, or
welfare of others.

 

Tex. Civ. Prac. & Rem. Code Ann. '' 41.001(7).








The evidence established that Appellee was exposed to Insulag
almost daily during the 1950=s and 1960=s.  In 1959, an
Occupational Disease Survey was conducted at Appellant=s plant in New Jersey.  The survey measured Athe occupation disease exposure
associated with [Appellant=s] manufacturing operations.@ 
Air samples were taken throughout the plant to measure its quality by
obtaining dust samples.  The overall dust
levels exceeded the threshold limit, twenty (20) million particles per cubic
feet of air for medium silica dust and five (5) million particles per cubic
feet of air for asbestos, adopted at the 20th annual meeting of the American
Conference of Governmental Industrial Hygienists.  The samples taken in the casting department
where Insulag was mixed resulted in forty-one
(41) million particles per cubic feet of air. 
In the area where Insulag was bagged,
the sample resulted in twenty-four (24) million particles per cubic feet of
air.  The study also found that the Insulag mixture of cement, asbestos, and brick dust
presented an asbestosis exposure and that the exposure in the plant was well
above the prescribed threshold limit.  

Dr. Lemen
testified that there were well over one hundred articles in medical literature
by the end of the 1950=s that discussed the asbestos-related disease in persons
working with asbestos-containing products. 
If combined with the articles about people who were getting sick while
working with asbestos in an asbestos textile mill, Dr. Lemen
estimated there were as many as seven hundred articles. 

Finally, J. J. Marino, Appellant=s former chief engineer, testified
that it was not clear until the 1970=s that asbestos was dangerous.  Marino stated that as late as 1972, Ano one ha[d] made up their mind yet
as to if it was hazardous or wasn=t hazardous or to what degree it was
hazardous if it was hazardous.@  He testified that Aprior to the middle of =72, I had no idea it was hazardous or
believed it was hazardous.@  Moreover, Appellant
believed Insulag was not dangerous because A[w]e were making it correctly.  We were telling the people in the field how
to mix it correctly.@  Marino testified that
there was not sufficient information available at that time to determine
whether 10 percent or 20 percent asbestos in a product mix had the same
hazardous effect as 100 percent asbestos. 








When viewed objectively from
Appellant=s standpoint at the time of Appellee=s exposure to Insulag, we
find there is no evidence to establish that the use of Insulag
involved an extreme degree of risk, considering the probability and magnitude
of the potential harm to others. 
Likewise, there is no evidence to establish that, at the time Appellee worked with Isulag,
Appellant had actual subjective awareness of the risks involved with the use of
Insulag and still proceeded with conscious
indifference.  Because Appellee failed to meet the objective and subjective prongs
of conscious indifference malice, we sustain Issue No. Five.


Having overruled
Issues No. One
through Four, we affirm that portion of the trial court=s judgment.  Having sustained Issue No.
Five, we reverse that portion of the trial court=s judgment as it relates to malice
and render a take nothing judgment with regard to the punitive damage award. 

January 10,
2003

 

 

                 
                                                                                                                                          RICHARD BARAJAS, Chief
Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.