Petition for Writ of Mandamus Granted and Opinion filed November 5, 2003









Petition for Writ of Mandamus Granted and Opinion
filed November 5, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00385-CV

____________

 

IN RE SEARS, ROEBUCK AND CO.

 

 

 



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 



 

O
P I N I O N

Twice
in the last ten years the Supreme Court of Texas has granted the extraordinary
writ of mandamus in circumstances just like those here.  Both times, the Court intervened in asbestos
litigation when the trial court compelled discovery relating to products the
plaintiffs never used for time periods they were not employed.  See In re American Optical Corp., 988
S.W.2d 711, 713 (Tex. 1998);  Texaco,
Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex. 1995).  In this asbestos discovery dispute, the trial
court compelled discovery relating to products the plaintiff never said he used
for a time period beginning 15 years before he was born.  Rather than invite the Supreme Court to
answer this question a third time, we grant relator=s petition for mandamus.








The
Requests

Joel
Fuerstenau, a life-long Michigan resident suffering
from mesothelioma,[1]
sued Sears, Roebuck and Co. and 37 other defendants in Brazoria County, Texas.[2]  He alleged exposure to asbestos throughout
his lifeCas a child around his father=s dusty clothes and work, as an
apprentice from 1971 to 1978 in the family=s plumbing and heating
business, and as a union plumber for 24 years thereafter.  

In
sworn discovery responses regarding materials to which he had been exposed, Fuerstenau listed 11 categories of products made by 24
manufacturers.  Only twoCHomart boilers and water heatersChad any connection with
Sears.  Four co-workers designated for
product identification added no others. 
As these Homart products were for residential
use, Fuerstenau=s exposure to them would have
occurred before he began his 24-year career as a union plumber doing commercial
jobs.

Fuerstenau=s case was expedited due to his
declining health.  Two months before the
trial setting, the plaintiffs served their first written discovery on SearsCa single-spaced 64-page request
including 78 interrogatories (with 253 subparts) and 60 requests for
production.[3]  The plaintiffs= attorneys candidly admitted
this was the Astandard set@ of discovery sent to asbestos
manufacturers.  When directed instead to
a retailer like Sears, the result was a series of impossible requests:








$                  
Interrogatory
No. 2 asked Sears to provide the name, date of manufacture and sale, and
asbestos content of each product it sold or made available for sale, including
but not limited to a list of more than 200 items ranging from bath rugs and
shower curtains to lawn mowers, sewing machines, washers, dryers, toasters, and
waffle irons;

$                  
Interrogatory
No. 8 asked Sears to identify the location, description, and dates of operation
of every Sears warehouse or sales office in Texas;

$                  
Interrogatory
No. 17 asked for a detailed description of every product Sears ever sold
containing asbestos; and

$                  
Interrogatory
No. 20 requested the identity and address of all Sears sales offices or
authorized dealers of asbestos-containing home construction products in the
United States.

 

Sears
promptly objected, the plaintiffs promptly moved to compel, and the trial court
promptly held a number of hearings.  Fuerstenau died before the trial court issued a written
order.

                                                   The
First Order

On
April 1st, Judge Ben Hardin issued a written order regarding discovery.  In the first paragraph, he ordered all of
Sears= objections Areserved, to be addressed by
this Court at a later time.@[4]  But a court must address objections before
it compels discovery, not after. 
See Tex. R. Civ. P. 193.4(b) (providing no response to discovery
is required if objections are sustained). 
Once time, labor, and money are spent on improper production, there is
no undoing them; wasteful costs may be shifted, but never retrieved.  By ordering discovery from Sears, Judge
Hardin necessarily overruled its objections.








In
the next two paragraphs, Judge Hardin ordered Sears to produce documents and
information regarding listed products from the years 1940 to 1978.[5]  The lists omitted the mundane household items
from the plaintiffs= original request, but required
production regarding water heaters and boilers of any brand name (not just Homart), and added furnaces and heaters.  Further, the lists included materials and
products allegedly Aassociated@ with these appliances,
including electric elements, fittings, repair parts, accessories, pipe
coverings, adhesives, pastes, cements, firebricks, and so on. 

In
the fourth and final paragraph, Judge Hardin ordered Sears to answer Aeach and every@ discovery request Afully, completely, specifically
and substantively.@[6]  This paragraph does not contain any
limitations as to products or years.  The
order does not indicate whether the middle two paragraphs were intended to
limit this global order, or supplement it.








The
Stay and Clarification

After
Sears filed its petition for mandamus complaining of the above order, we stayed
the order for further consideration.[7]  Perhaps recognizing the order went too far,
the plaintiffs asked Judge Hardin to Aclarify@ it.  During the pendency
of our stay, he entered a new order (Sears alleges without adequate notice)
that replaced and superceded the old one. 

This was
improper.  The mere filing of a mandamus
petition may not prevent a trial court from amending an order, but a stay order
does.  When we ordered the first order
stayed, Judge Hardin was not at liberty to change it.[8]  If the plaintiffs needed clarification of the
trial court=s order, they should have asked us to
order one. 

We
rarely stay trial court orders, recognizing trial judges must often make
further decisions before appellate timetables and processes allow us to
respond.  But when we do issue a stay
order, it must be obeyed.[9]  We hold that Judge Hardin abused his discretion in modifying
his order in violation of our stay. 

The
AClarified@ Order








The
Aclarified@ order repeated the first three
paragraphs of the first order, but amended the fourth to require Sears to
respond to the plaintiffs= discovery requests Aas ordered by the Court on the
record at the hearings on January 22 and 27, 2003.@[10]  Not a single page from either hearing is
attached to the clarifying order itself; the transcripts included in our record
are 90 pages long.

This
order is inadequate for several reasons. 
First, it is obviously incomplete. 
The hearing on January 22nd begins with the Court=s declaration, AFirst, my ruling of yesterday
stands on the list of products.@  Thus, on the most critical issue (i.e., which
of Sears= products must be covered in
its responses), the actual ruling is referenced but not included.  The order excludes additional rulings that
took place on January 21st (a further 60 pages in the record) and in a
telephone conference on February 11th (an additional 20 pages).  Taken altogether, two obvious facts emerge:
(1) Judge Hardin was nothing if not patient and thorough, but (2) his written
order is incomplete. 

Second,
the order creates internal conflicts by incorporating so much dialogue.  For example, the clarified order expressly
limits discovery to the time period 1940 to 1978.  But for many of the discovery requests, Judge
Hardin orally ordered that production be made without any limitation on the
time period at all.  Because this
discovery order was never committed to paper, no one ever addressed the
apparent conflicts and uncertainties within it.








Third,
it is hard to determine what the order is. 
No transcript of either hearing is attached to the order, and our record
does not reflect that either was filed with the court clerk.  Thus, to find out what the Court ordered, it
appears one must obtain a copy of these transcripts from the court reporter,
and then find where each item is discussed within those 200 pages.  But that is still not enough.  As is usually the case in oral hearings, the
discussion between counsel and the court often backs up to previous matters or
jumps ahead to upcoming ones.[11]  Concessions or rulings in one place apply to
items discussed somewhere else.[12]  Items are disposed with a nod or an inference
that can only be interpreted by those who were there.[13]  As a result, it is not always possible to
tell what the trial court=s order means.








Finally,
it is not just the court=s order that is unclearCit is hard to tell from this
record what many of the discovery requests were.  Discovery requests must be reasonably
tailored to the case.[14]  But the discovery requests here were tailored
to asbestos manufacturers, and thus often needed extreme makeovers to fit
Sears.  Repeatedly during the hearings
(and to some extent still in this Court), the plaintiffs had to make cuts and
stitches more indicative of battlefield surgery than tailoring. 

We
recognize the pressure on all concerned to conduct this trial at a time when
Joel Fuerstenau could still attend it.  But the rules of procedure do not contemplate
oral discovery requests, much less an entire set crafted with the trial court=s help in a hearing on a motion
to compel.  The trial court should have
recognized the plaintiffs= concessions and Aclarifications@ for what they wereCa recognition that their
requests were overbroad.  See General
Motors Corp. v. Lawrence, 651 S.W.2d 732, 734 (Tex. 1983) (finding abuse of
discretion based in part on counsel=s concession that relevant
information was much less than trial court=s order). 

There
are reasons why detailed discovery orders should be written down.  Because several of them are demonstrated by
the defects in this order, we hold the trial judge abused his discretion by
signing a written order that merely incorporated 200 pages of oral rulings.

The
Substantive Problem

Aside
from the problems in the timing and format of this order, its substance was
also improper.  A "fishing expedition" is
one aimed not at supporting existing claims but at finding new ones.  See Dillard Dept. Stores, Inc. v. Hall,
909 S.W.2d 491, 492 (Tex. 1995). As noted above, the only Sears products that Joel Fuerstenau or any of his designated co-workers identified
as potential sources of asbestos exposure were Homart
water heaters and boilers.  Yet the order
required production of far more.

The
plaintiffs= attorneys candidly admitted
they developed the list of products attached to the trial court=s order by scanning a Sears
catalog for products they (not any testifying witness) thought might contain
asbestos and might be used with Homart boilers
and water heaters:








We already know that Mr. Fuerstenau
identified Sears boilers and [water] heaters. 
Every other product on Exhibit A, in our belief, is related to boilers
and heaters.  Now, we could be wrong
because we=re not engineers; and we=re guessing here since Sears did not
provide us any discovery responses. 

It is not enoughCeven for discovery purposesCto guess what products may have
injured a plaintiff.  Nor is it enough
that a plaintiff was Aat least potentially exposed@ to a product, as anyone can be
Apotentially exposed@ to everything.  In order to justify the cost of producing
documents and information, there must be a likely benefit.  See Tex.
R. Civ. P. 192.4(b) (prohibiting discovery
when burden outweighs likely benefit). 
There is no benefit in conducting discovery relating to products as to
which there is no evidence Joel Fuerstenau was ever
exposed.

Although some latitude is necessary in discovery matters,
Sears extended some latitude here.  
Before Judge Hardin signed any order, Sears presented several witnesses
to testify concerning which of its products might be used with a water heater
or boiler, and whether they contained asbestos. 
Nevertheless, no witness has yet suggested that Joel Fuerstenau
might have been exposed to asbestos from any except the two initially
stated.  Indeed, it is hard to imagine
how anyone could, as FuerstenauC

$                  
never
installed Homart products (because he was not a Sears
contractor), and thus presumably would not know the origin of any adhesives,
gaskets, or cements used by the installer;

$                  
could not
remember any specific location or occasion where he helped repair or remove Homart products, and thus could not make inquiry of
the installer; and

$                  
could
only identify Homart products from a nameplate,[15]
which he did not see anywhere except on the water heaters or boilers
themselves.








As the basis for his order, Judge Hardin stated on the
record his opinion that defendants must first identify which of their products
contain asbestos, and only then must plaintiffs identify the products to which
they claimed exposure.  But in addition
to providing an unnecessary temptation to memory,[16]
this procedure requires defendants to produce information regarding a claim the
plaintiff has not yet made.

We recognize asbestos claimants face substantial obstacles
in proving the products to which they were exposed decades earlier.  This is especially true in this case, as Joel
Fuerstenau worked around Sears= products but never installed
them.[17] 
But Fuerstenau=s death from an asbestos-related
disease does not entitle his estate to recover money from all companies selling
asbestos products.  See Gaulding v. Celotex Corp.,
772 S.W.2d 66, 71 (Tex. 1989) (rejecting market-share theory of liability in
asbestos litigation).  Instead, recovery
is available only from those whose products caused his disease

Further, asking asbestos claimants to identify the products
on which they worked is by no means asking the impossible.  In one of the mandamus cases cited at the
outset, the
Supreme Court noted the plaintiff had pictures of the defendant=s products to use to identify
them.  See American Optical, 988 S.W.2d at 713.  Here, the plaintiffs had the ubiquitous Sears
catalog to help them do the same. 
Moreover, the record contains little evidence that efforts were made to
identify locations where Fuerstenau might have worked
on residential systems.  Undoubtedly,
this would take a lot of work, but that alone is no reason to shift the burden
of identification to Sears.








Conclusion

A central consideration in determining overbreadth
is whether discovery requests could have been more narrowly tailored.  See In re CSX Corp., No. 03‑0381,
2003 WL 22272604, at *3 (Tex. 2003).  
Because the requests here clearly could, the trial court abused its
discretion by holding otherwise.  Sears
is entitled to mandamus relief, as an eventual appeal is not an adequate remedy.  See id. (holding appeal is inadequate remedy when burden of discovery
far exceeds any benefit).  We direct the district court to vacate its
discovery orders of April 1 and May 12, 2003, and to conduct further proceedings
consistent with this opinion.   The writ
will not issue unless the district court fails to comply promptly.

 

 

 

/s/      Scott
Brister

Chief Justice

 

 

Petition Granted and Opinion
filed November 5, 2003.

Panel consists of Chief Justice
Brister and Justices Edelman and Guzman.

 

 

 











[1]  The record
reflects some uncertainty whether Furstenau suffered
from mesothelioma or adenocarcinoma.  For the purpose of this proceeding, we assume
the plaintiffs= allegations are correct.





[2]  In view of our
disposition, we do not reach Sears=
complaints that Fuerstenau had no ties to Texas and
that Michigan law applies to his substantive claims.





[3]  In fairness to
the plaintiffs, it should be noted the defendants=
interrogatories required Fuerstenau to answer 33
interrogatories that included 114 subparts.





[4]  The first paragraph of the order
stated in full:

 

1.         Sears= objections, as reflected in its
various objections and responses to the requested discovery and in its
Emergency Motion for Protection, are reserved, to be addressed by this Court at
a later time[.]





[5]  These paragraphs stated in full:

 

2.         Sears is ordered to produce its documents and to provide
information regarding each item on the enclosed lists, Exhibits A and A-2; 

3.         The
Arelevant time period@ as to Joel Fuerstenau=s exposure to Sears= asbestos-containing (or possibly
containing) products shall be for products designed, manufactured, marketed,
sold, installed or removed at any time during the years 1940B1978, inclusive.  For discovery regarding exposures or claims
related to Sears= products, the inquiry shall be for
exposures to said products arising at anytime during the same period, 1940B1978, inclusive[.]





[6]  The final paragraph stated in full:

 

4.         Subject
to and without waiving its prior objections, Defendant Sears shall fully,
completely, specifically and substantively Answer and Respond to each and every
Interrogatory and Request for Production served upon it by Plaintiffs Joel and
Debra Mary Fuerstenau, for itself, for all
predecessors and successors [sic] entities of Sears, and for Allstate Insurance
Company throughout the period of Allstate=s status as a subsidiary of Sears,
with all responsive documents and items being identified by number as to each
numbered interrogatory and request for production, and with such answers and
responses to be provided by Sears to Plaintiffs, at the offices for Plaintiffs= counsel, no later than May 2, 2003.





[7]  Our order
stated; AIt appears from the facts stated in the petition that relator=s request for relief requires further consideration
and that relator will be prejudiced unless immediate
temporary relief is granted. . . . We therefore ORDER the April 1, 2003 discovery
order . . . is stayed until final decision by this Court on relator=s petition for writ of mandamus, or until further
order of this Court.@





[8]  Cf. In re American
Home Assurance Co., 88 S.W.3d 370, 372 (Tex. App.CTexarkana 2002, orig. proceeding) (reviewing amended order in the
interest of judicial economy, even though it was entered after appeals court
stayed enforcement of original order).





[9]  Cf. Tex. R. App. P.
29.5 (barring trial court during interlocutory appeal from entering orders
inconsistent with appellate temporary orders or interfering with appellate
court=s jurisdiction).
 





[10]  The amended paragraph stated:

 

4.   Subject
to and without waiving its prior objections, Defendant Sears shall answer and
respond to the Interrogatories and Request for Production as ordered by the
Court on the record at the hearings on January 22 and 27, 2003.  Sears shall answer for itself, all
predecessors and successor entities of Sears and for Allstate Insurance Company
during the period of Allstate=s status as a subsidiary of
Sears.  Sears shall identify responsive
documents and items by number as to each numbered interrogatory and request for
production.





[11]  [Plaintiffs=
Counsel]:   Next one, your Honor, is 49.

                      [Court]:   And we had an agreement on 49, I believe.

    [Plaintiffs= Counsel]:   And
next one is 50.  And we may have B this is about warning labels.  We may have included it in 25.

                      [Court]:   Yeah, I think so.





[12]  [Plaintiffs=
Counsel]:   Yes.  35 B 

      [Defense
Counsel]:   Again, Judge, I think this is
just way overbroad and it=s not relevant and it=s B you know, we=re going
to be running down 6,000 different rabbit trails if we have to start
researching every company that Sears ever had an interest in, sold, purchased,
et cetera.

                      [Court]:   There=s an
interrogatory on this, and however we limited the interrogatory, I=ll order the Request for Production be done the same, if
it was limited.

    [Plaintiffs= Counsel]:   I=ll go back and look at the interrogatory.  And No. 36 . . .  





[13]  [Plaintiffs=
Counsel]:   Okay.  29, sales materials I would recommend be
limited to the Exhibit A items.

                      [Court]:   And the time frame.

    [Plaintiffs= Counsel]:   Time
period, yes.

      [Defense
Counsel]:   And we=re going to go forward with the scope, the subsidiary
and predecessor entities; or are you limiting it to Sears?

    [Plaintiffs= Counsel]:   What
I call the Sears family.

                      [Court]:   I=m
including the affiliates.

    [Plaintiffs= Counsel]:   Right.  The next one is 30 . . .





[14]  See In re Alford Chevrolet‑Geo, 997 S.W.2d 173, 180 (Tex. 1999). 





[15]            [Fuerstenau]:   I can remember B yeah, I
can remember tearing down Homarts.  Yeah.

      [Defense
Counsel]:   Do you recall any specific
places where you did that?

              [Fuerstenau]:   No.  No, not really.

      [Defense
Counsel]:   Was there anything distinctive
in the look of a Homart water heater?

              [Fuerstenau]:   Just
the name plate, I guess.





[16]   See, e.g., G-I Holdings, Inc. v. Baron &
Budd, 179 F.Supp.2d 233 (S.D.N.Y.
2001) (discussing claims against law firm based on memo allegedly counseling
asbestos clients how to fabricate product identification).





[17]  See id. at 242 (quoting law firm=s memo to clients to Atestify
ONLY about INSTALLATION of NEW asbestos, NOT tear-out@ because Ait is
almost impossible to prove what brand of material was being torn out@) (emphasis in original).