Opinion issued June 24, 2004











  
 




In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-01006-CV
____________
 
SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, Appellant
 
V.
 
NL INDUSTRIES, INC., Appellee
 

 
 
On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2000-31175
 

 
 
MEMORANDUM OPINION 
          Spring Branch Independent School District (the District) appeals the trial
court’s order granting NL Industries, Inc.’s motion for summary judgment. In one
point of error, the District argues that the trial court erred in granting a no-evidence
summary judgment for NL Industries when the District presented more than a scintilla
of evidence showing that NL’s product was applied to and present in the District’s
buildings. We affirm.
Background
          The District owns 46 buildings that were constructed from 1950-1977. Testing
reports and paint samples taken from the buildings showed the presence of lead paint
in 40 of the buildings. In June 2000, the District sued NL and several former lead
paint and lead pigment manufacturers


 alleging strict liability for design and
marketing defect; negligent product design and failure to warn; fraudulent
misrepresentation; concert of action; and restitution for the cost of abating lead paint
on specific components in the 40 separate buildings identified in the District’s
damages report.


 In March 2002, NL filed a no-evidence motion for summary
judgment asserting that the District had 
no evidence that NL made any lead paint or lead pigment present in 41
of its 46 buildings. Of the remaining five buildings, one building no
longer exists, and [the District] has no testimony, invoices,
specifications, or any other evidence indicating that NL lead paints or
lead pigments were ever applied to any surface in the remaining four
structures.

At the summary-judgment hearing, the trial court postponed ruling on the motion
pending certification from NL that it had complied with the District’s discovery
requests. 
          The day after the summary-judgment hearing was postponed, the District filed
a supplemental affidavit from Mark Tiedt, who testified that, as the District’s
employee, he was “personally familiar with [the District’s] painting practices and the
paint used in or on [the District’s] facilities.” Upon receipt of Tiedt’s supplemental
affidavit, NL deposed Tiedt as well as Lee Alan Burckle. Burckle was the branch
manager of the organization that submitted the preliminary opinion of lead paint
abatement cost that was relied upon by the District when it brought suit. 
          One month later, NL filed its second no-evidence motion for summary
judgment as to causation. In its motion, NL asserted that the District’s “‘evidence’
of product identification with respect to NL has been a moving target, which has
failed to arrive at any evidence that NL lead paint exists on any surface at any Spring
Branch school.” The second no-evidence motion for summary judgment raised the
same arguments found in the earlier motion, but also attempted to impeach the
“personal knowledge” Tiedt had asserted in his supplemental affidavit. Attached to
the motion were excerpts from Tiedt’s deposition testimony in which he conceded
that he had no personal knowledge of what paints were used or where they were
applied before he assumed direct responsibility for the District’s paint department in
1985 or 1986. It was his understanding that, in the early 1980s, NL’s Dutch Boy
House Paint was used on the “bulkheads” on the front of the building at Spring Forest
Middle School and Westchester Senior High School, as well as on the outside plaster
walls facing the street at Spring Branch Elementary. He did not know, however,
when the paint was purchased or if the paint contained lead. Because each of these
facilities had been painted numerous times, Tiedt did not know if any Dutch Boy
House Paint still remained on the surfaces. 
          Also attached to the second no-evidence motion for summary judgment were
excerpts from Burckle’s deposition. Burckle testified that there was no positive
finding of lead in the “bulkheads” in front of Spring Forest Middle School or
Westchester Education Center (formerly “Westchester Senior High School”). He also
testified that there was no positive result with regard to any exterior plaster walls at
Spring Branch Elementary. The trial court granted NL’s second no-evidence motion
for summary judgment on causation.


 
No-Evidence Summary Judgment
          In its sole point of error, the District argues that the trial court erred in granting
a no-evidence summary judgment for NL when the District presented more than a
scintilla of evidence showing that NL’s product was applied to and present in the
District’s buildings.
Standard of Review
          A no-evidence motion for summary judgment is properly granted if, after
adequate time for discovery, the nonmovant fails to produce more than a scintilla of
evidence raising a genuine issue of material fact on the challenged elements. Tex. R.
Civ. P. 166a(i); Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994
S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The court must
grant the motion unless the nonmovant produces summary-judgment evidence that
raises a genuine issue of material fact. When determining if more than a scintilla of
evidence has been produced in response to a Rule 166a(i) motion for summary
judgment, the evidence must be viewed in the light most favorable to the nonmovant. 
Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 208 (Tex. 2002). It is well
settled that more than a scintilla of evidence exists if the evidence “rises to a level that
would enable reasonable and fair-minded people to differ in their conclusions.” 
Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994). On the other hand,
“[w]hen the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more than a
scintilla and, in legal effect, is no evidence.” Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983). When the trial court’s order does not specify the grounds for
granting summary judgment, an appellant must show that each of the independent
arguments alleged in the movant’s motion is insufficient to support the order. See
Richardson v. Johnson & Higgins, Inc., 905 S.W.2d 9, 11 (Tex. App.—Houston [1st
Dist.] 1995, pet. denied).
Causation
          Under traditional products-liability law, the plaintiff must prove that the
defendant supplied the product that caused the injury. Gaulding v. Celotex Corp.,
772 S.W.2d 66, 68 (Tex. 1989). “It is not enough that the seller merely introduced
products of similar design and manufacture into the stream of commerce.” Firestone
Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996). An appellant must
point out any fact questions which allegedly existed on material issues, because the
appellate court is not required to search the record for a possible fact issue.


 See
Sorsby v. State, 624 S.W.2d 227, 230-31 (Tex. App.—Houston [1st Dist.] 1981, no
writ). 
          The District asserts that there is “uncontradicted circumstantial
evidence—direct and indirect—from third-party past and present employees of the
District who:
          •        purchased lead paint;
          •        applied it to the District’s buildings;
          •        confirmed that leftover paint cans were routinely stored in
the paint shop for future use;
          •        labeled the leftover paint cans;
          •        saw numerous lead paint cans in the District’s paint shop;
          •        attempted to re-mix paint and match the tinting based on
the labels;
          •        remembered that the leftover paint cans included lead paint
that was applied and immediately removed; and
          •        were involved in the ultimate removal and disposal of
those leftover lead paint cans.”

          Direct Evidence
          There was, however, no direct evidence that NL’s lead paint or pigments were
applied to the areas that testified positive in the report. Tiedt testified that, although
he remembered the District applying Dutch Boy House Paint to three surfaces, he did
not recall whether the paint contained lead or when the paint was purchased. 
Furthermore, none of the three surfaces Tiedt identified tested positive for lead paint.
          Circumstantial Evidence
          Despite the District’s assurance to the trial court that it was “not trying to
establish market share liability,” the emphasis in its brief suggests otherwise. The
District attempts to overcome NL’s summary judgment by showing, circumstantially,
that NL’s market share presumes liability.
          The District contends that, either NL’s paints or its pigments which were sold
to other paint manufactures and re-labeled, were present in the District’s buildings. 
The District acknowledges that, by 1945, there were eight companies that were
reported to have produced white lead pigments in the United States. Lead expert, Lee
A. Burckle testified, that “paint containing lead was found on the interior and exterior
of the schools on numerous building components.” Environmental science expert
James R. Millette, Ph.D. testified that “numerous buildings in [the District] have
paints that contain either white lead carbonate pigment or white lead sulfate pigment
particles.” Peter Reich, assistant professor of environmental health at Boston
University School of Public Health, testified that NL “dominated the U.S. white lead
pigment business from the early 1900s and continued its dominance into the 1970s.” 
(Emphasis added.) Reich further opined that NL was “virtually the only domestic
source for white lead pigments for use by independent paint companies from 1950
forward.” (Emphasis added.) Jan W. Gooch, adjunct professor and principal research
scientist at the School of Chemical Engineering at Georgia Institute of Technology
and author of the Lead-Based Paint Handbook, testified that white lead carbonate
is the principal white lead pigment that was distributed in this country from 1940
through 1978. White lead sulfate was also a commercial white pigment. Gooch
further testified that NL was the “major supplier of white lead pigments during the
period from 1940 through 1978. . . . Other suppliers during the 1940s and 1950s
included Eagle-Picher, Euston Lead (Glidden), Fuller, IS&R, Lewis, McGregor, and
Sherwin-Williams.” (Emphasis added.) According to Gooch, by the mid-1950s, “NL
was by far the largest supplier of white lead pigments in the United States. . . . NL
was virtually the only source for white lead pigments for use by independent
companies from 1950 forward.” (Emphasis added.)
          Glenn Friedrich testified that he remembered using lead paint and oil-based
paints while employed by the District in the 1970s. Edgar Friedrich testified that,
while he worked for the District between 1974 to 1988, the District used “lead-containing paint” on its buildings. Friedrich remembered buying paint from
Benjamin Moore, Cook Paint, Devoe Paint, and Sherwin-Williams. Albert Pradia
testified that he used lead paint while working as a painter for the District since 1975. 
He remembered using Benjamin Moore Paint, Sherwin-Williams, Diamond Paint,
Glidden Paint, and Dutch Boy Paint. 
          The District asserts that NL supplied lead paint to third-party manufacturers
such as Sherwin-Williams, Glidden, and DuPont. There is no evidence, however, that
these manufacturers were using NL lead pigments at any time that the District used
their paints.
          The District established that NL was the dominant supplier of white lead
pigments. However, we must follow the Texas Supreme Court’s rationale in
Gaulding which stated that “the practical impossibility of determining where or when
the product was marketed makes insurmountable the problem of identifying the
defendants’ relevant market shares. We conclude that no variation of market share
liability could be applied rationally and fairly on the facts of this case.” Gaulding, 772
S.W.2d at 71. The District seeks to hold NL liable for the abatement of all of the lead
paint in the entire District with no distinction drawn between paint containing white
lead pigments and paint containing other types of lead products. By relying on the
theory that NL was “virtually the sole supplier” of lead pigment, the District
disregards the bedrock principle of Texas law that a plaintiff must identify the
manufacturer of the product that allegedly injured it. See id. 
          We overrule the District’s sole issue.
 
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Hanks, and Higley.