Laura Anne **BEZUIDENHOUT**,
Plaintiff,

v.

The **ABBOTT LABORATORIES & CO.**, et al., Defendants.

No. 10–CV–1011 (ENV)(JMA).

United States District Court,
E.D. New York.

Jan. 17, 2013.

Sybil Shainwald, Law Office of Sybil Shainwald, New York, NY, for Plaintiff.

John Brenner, Pepper Hamilton, LLP, Princeton, NJ, Robert D. Wilson, Jr., The Centre at Purchase, Purchase, NY, Rosevelie Marquez Morales, Harris Beach, PLLC, Sheila Annmarie Moeller, Gilbride, Tusa, Last & Spellane LLC, Samuel J. Abate, Jr., Pepper Hamilton LLP, Susan Charters, McGivney & Kluger, P.C., Beatrice A. Hamza, Hughes, Hubbard & Reed LLP, Jordan David Weiss, Goodwin Procter LLP, Valerie Anne Haggans, Goodwin Procter LLP, Simon Shamoun, Harvey Gladstein & Partners LLC, David M. Covey, Soo Yeon Kim, Stephanie Chantelle Coste, Sedgwick, Detert, Moran & Arnold, New York, NY, Gerald Steven Gaetano, Whitney & Bogris LLP, Towson, MA, John C. Maloney, Day Pitney LLP, Morristown, NJ, Kevin Charles Tierney, Tierney Law Office, Philadelphia, PA, Heidi Elizabeth Hilgendorff, Drinker, Biddle & Reath, Florham Park, NJ, for Defendants.

## MEMORANDUM AND ORDER

VITALIANO, District Judge.

On September 10, 2012, Magistrate Judge Joan M. Azrack issued a Report and Recommendation ("R & R") in which she recommended that defendants' motion for summary judgment be granted, dismissing all claims brought in this action by plaintiff Laura Anne Bezuidenhout. On October 4, 2012, plaintiff made timely objections to the R & R. After careful and *de novo* review of the record, this Court adopts Judge Azrack's R & R in its entirety, as supplemented by this Memorandum and Order, as the opinion of the Court. The reasons are detailed below.

## BACKGROUND

On March 5, 2010, plaintiff filed suit against drug companies Abbott Laborato-

ries; Carnrick Laboratories, Inc.; Dart Industries, Inc.; E.R. Squibb & Sons, L.L.C. ("Squibb"); Eli Lilly and Company ("Lilly"); GlaxoSmithKline, LLC; GlaxoSmithKline/SmithKline Beecham Corp.; Kremers–Urban Co.; Lannett Co., Inc.; Mallinckrodt Inc. ("Mallinckrodt"); Merck Sharp & Dohme Corp.; Merrell Dow Pharmaceuticals, Inc.; Ortho–McNeil Pharmaceutical, Inc.; Pfizer; Premo Pharmacuetical Laboratories, Inc. ("Premo"); Rhone–Poulenc Rorer Pharmaceuticals, Inc.; and Solvay Pharmaceuticals, Inc.,[1] asserting that defendants are liable for injuries Bezuidenhout sustained from her *in utero* exposure to the prescription medication diethylstilbestrol ("DES"), (Compl. ¶¶ 7–23, 34), which was formerly manufactured and marketed by each of the defendants. (Compl. at ¶ 24.) On February 10, 2012, Lilly filed a motion for summary judgment, (Docket No. 77), which was joined by all other remaining defendants— Mallinckrodt, Premo, Squibb, and Upjohn—claiming that plaintiff could not identify the manufacturer of the DES taken by her mother, as required under the law of Texas, which governs the case.[2]

Upon reference pursuant to Rule 72(b), Judge Azrack determined that defendants' motion for summary judgment dismissing all claims should be granted in its entirety. (Docket No. 114.) To plaintiff's timely objections ("Objections"), (Docket Nos. 115, 117), Lilly filed a timely response on October 9, 2012, (Docket No. 118).

### STANDARD OF REVIEW

In reviewing a Report and Recommendation of a magistrate judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Moreover, in conducting its review, the district "court need only satisfy itself that there is no clear error on the face of the record" to accept a magistrate judge's Report and Recommendation, that is, where no timely objection has been made. *Urena v. New York*, 160 F.Supp.2d 606, 609–10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F.Supp. 1186, 1189 (S.D.N.Y.1985)). But, as is the case here, a district judge is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed.R.Civ.P. 72(b)(3); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir.2010).

### DISCUSSION

Plaintiff objects to the R & R, contending that the action should be permitted to proceed to trial irrespective of plaintiff's ability to identify the drug company that manufactured her mother's DES, because Texas law remains unsettled as to the applicability of the market share theory of liability in the products liability field. (Objections at 1–7.) Relatedly, plaintiff claims that she raises a genuine issue of fact as to the identity of the relevant drug manufacturer. (Objections at 7–9; Ltr. (Oct. 4, 2012).)

1. *Texas Courts Have Not Adopted Market Share Liability*

Plaintiff argues that, founded on the premise that Texas courts have not determined whether a plaintiff can use market share theory to prove causation in a products liability action, a federal court applying Texas law should allow a case like the one at bar to proceed to trial. Plaintiff postulates further that the New York

---

1. Pharmacia & Upjohn Co. ("Upjohn") was named as a defendant in the Amended Complaint filed on April 27, 2010.

2. The parties agree that Texas law is controlling here. (R & R at 151–52.)

Court of Appeals would do so, in light of Texas's certification statute. (Objections at 1.) The Court need not wade too deeply into Bezuidenhout's pool of hypotheticals, since it rests upon a false premise—Texas law, as to proof of causation, is unsettled. It is not. "Texas law," as Judge Azrack stated succinctly, "has declined to adopt market share or other alternative liability theories for product liability suits." (R & R at 154.) Thus as a foundational step, Texas law requires plaintiff to identify the specific manufacturer of the DES ingested by her mother to warrant trial of liability issues.

Plaintiff tries to bootstrap to an alternate reality. She builds her argument around *Gaulding v. Celotex Corp.,* 772 S.W.2d 66, 71 (Tex.1989), a 13–year–old decision in which the Supreme Court of Texas cabined its refusal to apply market share liability by stating that "[w]e are not to be construed as approving or disapproving alternative liability, concert of action, enterprise liability, or market share liability in an appropriate case." (Objections at 5.) As built, the argument is a phantom, focusing only on what the Texas high court did not do. Although faced with the opportunity to add new lanes on the causality highway to encompass such theories of liability, neither then nor in the intervening years, has the Supreme Court of Texas once chosen to do so. (*See* R & R at 153 (citing *Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796 (Tex.1994)); Objections at 5.)

Significantly, presented with the question of whether Texas law now recognizes alternative theories of liability, the Fifth Circuit has held on two occasions, post-*Gaulding,* that Texas law requires "that the plaintiffs must prove that the defendant supplied the products which caused the injury" in products liability actions. *In re Fibreboard Corp.,* 893 F.2d 706, 711 (5th Cir.1990); *see also Cimino v. Ray-*

*mark Industs., Inc.,* 151 F.3d 297, 312 (5th Cir.1998) (rejecting district court's finding, on the basis of *Gaulding,* that the Texas Supreme Court would apply collective liability, and determining that "under Texas personal injury products liability law causation and damages are determined respecting plaintiffs as individuals, not groups.") (citation omitted). The Eastern District of Texas echoed this principle in a recent pharmaceutical products liability action, reiterating that the plaintiff was required to "adduce evidence that [the defendant] supplied the specific doses that allegedly caused [plaintiff's] injury." *Hicks v. Pfizer,* 466 F.Supp.2d 799, 804 (E.D.Tex.2005).

Bezuidenhout is undeterred by this line of Fifth Circuit authority. She urges a finding of ambiguity in Texas law nonetheless. Plaintiff begins with the premise that other state high courts, having recognized the unique challenges presented by DES cases, have fashioned a unique response, which they have demonstrated by "consistently declin[ing] to extend market share theory beyond DES." (Objections at 5.) Since the Texas courts have never opined on such a case, the DES exception to products liability law is unsettled. By this logic, the law of any state that has not decided a DES case would be deemed unsettled, levering New York courts, and the courts of other states with similar conflicts laws, into the suboptimal position of deciding novel questions of law on behalf of their sister states. Of course, such meddlesomeness should be completely avoided in cases like this where the premise that the law is ambiguous is false. Texas law is not unsettled; one of the objects of this lawsuit if to unsettle it. To the contrary, like the *Hicks* court, this Court "is bound to apply the law of Texas as it currently exists and will not create innovative theories of recovery or defense

under local law." *Hicks v. Pfizer*, 466 F.Supp.2d. at 803 (citation omitted). As Judge Azrack rightly concluded, "the general identification rule under Texas law applies here and, in order to sustain her action, plaintiff must identify the specific manufacturer [or manufacturers] of the DES to which she was exposed." (R & R at 154.)

### 2. *Evidence of Manufacturer Identity*

Plaintiff argues in her Opposition to defendants' summary judgment motion (Docket no. 77–10), in her Objections to the R & R (Docket no. 117), and in a Supplemental Affirmation (Docket no. 117) that defendants' are not entitled to summary judgment because she has adduced evidence sufficient to identify Lilly as the manufacturer of the DES consumed by her mother.[3] Bezuidenhout constructs her argument around three highly flawed proffers of evidence: (1) an affirmation by her mother, Annie Mary Wiseman ("Wiseman affirmation"); (2) a telephone log ("Turner log") documenting a conversation between plaintiff's counsel and the current owner of the pharmacy where Wiseman, as she testified, purchased DES; and (3) an affirmation by a pharmaceutical consultant, Phillip P. Harnish ("Harnish affirmation"). As explained below, none (alone or in combination) raises a genuine issue of material fact.

#### A. *Wiseman Affirmation*

■ As Judge Azrack expounded in the R & R, *numerous flaws undermine the probative value of the Wiseman Affirmation.* Most significantly, the affirmation, in which Wiseman identifies Lilly as the manufacturer of the DES she ingested while pregnant with plaintiff, directly contradicts deposition testimony she gave two years earlier. (Defs. Mem. in Support, Ex. B at 44.) "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y. City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir.1996). Without even attempting to explain the reason for Wiseman's about-face, the affirmation, submitted with plaintiff's Opposition to defendants' summary judgment motion, is not properly before the Court. *See Reynolds v. Sealift, Inc.*, 311 Fed.Appx. 422, 425 (2d Cir.2009). The affirmation's reference to the "Dear Doctor" letter from Lilly forwarded by Wiseman's prescribing doctor does not rehabilitate the averment in contradiction of her deposition testimony. Neither in the affirmation, nor during her deposition, when Wiseman discussed the very same letter at length, (Defs. Mem. in Support, Ex. B at 45–48), did she claim that the letter, which she no longer has and a copy of which she does not claim to have seen since the initiation of this suit, refreshed her memory or otherwise informed her that Lilly actually manufactured her DES.

■ Bezuidenhout contends, nonetheless, that, pursuant to the reasoning of *Hicks v. Charles Pfizer & Co.*, 466 F.Supp.2d 799 (E.D.Tex.2005), the Court should consider the "Dear Doctor letter" as "adequate circumstantial evidence to defeat summary judgment." (Objections at 8.) The *Hicks* court, as Judge Azrack observed, allowed plaintiff's action to survive summary judgment on the basis of four newspaper articles, which it found admissible pursuant to Federal Rule of Evidence 807. In so doing, the court ruled

---

**3.** Presumably, if the Court were to credit Bezuidenhout's contention, the evidence aimed solely at Lilly would exculpate all other defendants under the substantive law of Texas as it has been determined by the Court.

that the articles "evince particularized guarantees of trustworthiness."[4] None of those particularized guarantees are present in this instance, nor are any others offered by plaintiff. (R & R at 155–56.) Indeed, Judge Azrack correctly found *Hicks* inapposite for that reason. *Id.* The Wiseman affirmation, including its reference to the "Dear Doctor letter" remains inadmissible and, therefore, cannot raise a genuine issue of material fact.

### B. *Turner Log*

■ The Turner log is similarly unhelpful in establishing the existence of a disputed material fact. Presented as plaintiff's counsel's notes from a conversation with the owner of the pharmacy where Wiseman purchased DES regarding past practices at the pharmacy, (Shainwald Aff. Ex. C), the Turner log constitutes hearsay.[5] Furthermore, it does not memorialize that the pharmacist had knowledge (personal or recorded) that plaintiffs mother was dispensed Lilly's product, *i.e.*, that he is competent to testify about anything regarding whether DES was actually dispensed there to fill Wiseman's prescription, much less its origin. *Id.* At best, the Turner log informs that, at some point, Lilly's DES was among the medications available at the pharmacy. It would be speculative, and impermissible, to infer solely on that basis that Lilly's DES was the only one dispensed to Wiseman. As

Judge Azrack discussed in detail, the Turner log contains nothing more than "a conclusory statement," on the basis of which "no reasonable jury could find for plaintiff." (R & R at 157.) Nothing in the proffer justifies an exception to the hearsay rule; nor can it support a factual conclusion as to the pharmacy's practice at the relevant time. "As a result, the Turner telephone log is also insufficient to create a genuine issue of material fact in this case." *Id.*

### C. *Harnish Affirmation*

■ After objecting to the R & R, plaintiff attempted to repair her evidentiary shortcomings by filing the Harnish affirmation in a supplemental submission. (*See* Ltr. (Oct. 4, 2012).) In fact, if anything, the Harnish affirmation has had the reverse effect, serving only to undermine any shred of probative value the Court might have found in the Turner log. In his affirmation, Harnish, a pharmaceutical consultant, affirms that the current owner of the pharmacy where Wiseman says she purchased DES told him by telephone that the pharmacy stocked DES manufactured by Lilly when he purchased the business in 1962. (Harnish affirmation at ¶ 6.) As plaintiff was born in 1957, (Objections at 2), the Harnish codicil to the Turner log about the stocking of Lilly's DES is entirely immaterial, other than to diminish the probative worth of the Turner log. As a

---

4. The *Hicks* court delineated five such guarantees: (1) "the statements in question were made long before any motive to fabricate arose," (2) "[h]ad Pfizer not manufactured the vaccine, it is likely that the true manufacturer ... would have stepped forward to correct the misinformation contained in the newspaper articles," (3) "[t]he risk of mistake or dishonesty is reduced given the multiple publications by different sources," (4) "the newspaper articles were written and published nearly contemporaneously with the events in question," and (5) "the issue of product

identification presented in this case is a 'binary event': either Pfizer supplied the doses, or it did not." 466 F.Supp.2d at 808–09.

5. On its face, it is not clear whether the log constitutes ordinary or double hearsay, as the two sentence summary does not specify whether Turner was describing the practice of the pharmacy while it was under his ownership or while it was under the ownership of his predecessor, about which he would have learned only second hand.

consequence, the log and the codicil, whether each is read separately or in combination, do not create a material issue as to the identity of the manufacturer (or manufacturers) of the DES consumed by Wiseman (even discounting the hearsay bar).

Thus having reviewed *de novo* the evidence, the Court concludes that plaintiff fails to raise a genuine issue of material fact regarding the identity of the manufacturers of the DES that her mother ingested. In any event, assuming, as plaintiff claims, that these proffers did create a genuine issue of material fact about whether Lilly manufactured the DES plaintiff's mother ingested, summary judgment would still be properly granted as to all active defendants other than Lilly, about whom no such evidence was proffered.

### Conclusion

For the foregoing reasons, upon *de novo* review, the Court finds Magistrate Judge Azrack's R & R to be correct, well-reasoned, and free of reversible error. The Court, therefore, adopts the R & R in its entirety, supplemented by this Memorandum and Order, as the opinion of the Court. Defendants' motion for summary judgment is granted, and plaintiff Bezuidenhout's claims in this action are dismissed.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

AZRACK, United States Magistrate Judge:

On March 5, 2010, plaintiff Laura Anne Bezuidenhout ("plaintiff") filed suit against the drug companies Abbott Laboratories; Carnrick Laboratories, Inc.; Dart Indus-

tries, Inc; E.R. Squibb & Sons, L.L.C.; Eli Lilly and Company ("Lilly"); GlaxoSmithKline, LLC; GlaxoSmithKline/SmithKline Beecham Corp.; Kremers–Urban Co.; Lannett Co., Inc; Mallinckrodt Inc.; Merck Sharp & Dohme Corp.; Merrell Dow Pharmaceuticals, Inc.; Ortho–McNeil Pharmaceutical, Inc.; Pfizer; Premo Pharmacuetical Laboratories, Inc.; Rhone–Poulenc Rorer Pharmaceuticals, Inc; and Solvay Pharmaceuticals, Inc. Compl. at 1, ECF No. 1.[1] Plaintiff's products liability action asserts that the defendant drug companies are liable for injuries she sustained as the result of *in utero* exposure to the prescription medication diethylstilbestrol ("DES"), which was formerly manufactured and marketed by each of the defendants. *See id.* ¶¶ 24–36.

On February 10, 2012, defendant Lilly filed the instant motion for summary judgment, Mot. for Summ. J. by Lilly, ECF No. 77, which was subsequently joined by defendants E.R. Squibb & Sons, LLC, ECF No. 68; Mallinckrodt Inc., ECF No. 81; Premo Pharmacuetical Laboratories, Inc., ECF No. 82; GlaxoSmithKline/SmithKline Beecham Corp., ECF No. 83; Pharmacia & Upjohn Company LLC, ECF No. 84; GlaxoSmithKline/SmithKline Beecham Corp., ECF No. 85; and Dart Industries, Inc., ECF No. 86 (collectively, "defendants"). Pursuant to the Honorable Eric N. Vitaliano's DES case management plan, defendants' motion has been referred to me for a Report and Recommendation.

For the reasons discussed below, I respectfully recommend that defendants' motions for summary judgment be granted because plaintiff is unable to identify the manufacturer of the DES to which she was exposed, a requirement under Texas law.

---

1. Plaintiff's complaint was filed in conjunction with four co-plaintiffs, Dorothea Woods–Gaston, Jennifer Rachel Gallant, Chandra Lori Martin, and Renee Ryan, none of whom are party to the instant motion for summary judgment. Compl. at 1, ECF No. 1.

## I. FACTUAL BACKGROUND

Plaintiff was born on June 29, 1957, in Carthage, Texas, to mother Annie Mary Wiseman ("Ms. Wiseman") and father David Wilson Jones. Pl.'s Local Civil Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s 56.1") ¶ 1, ECF No. 77–9. During the first trimester of her pregnancy with plaintiff in 1956, Ms. Wiseman experienced spotting. *See id.* ¶ 2. Thereafter, Ms. Wiseman consulted with Dr. Grundy Cooper ("Dr. Cooper"), her treating obstetrician, who prescribed her DES and bed rest. *Id.* Ms. Wiseman filled her prescription for DES at Rand Pharmacy in Carthage, Texas. Affirm. of Anne Marie Wiseman ("Wiseman Affirm.") ¶ 5, Aff. of Sybil Shainwald in Supp. of Pl.'s Opp. to Lilly's Mot. for Summ. J. ("Shainwald Aff.") Ex. B., ECF No. 77–11. Ms. Wiseman lived in Texas for the duration of the time that she took DES. *See* Lilly's Local Civil Rule 56.1 Statement of Undisputed Material Facts ("Lilly's 56.1") ¶ 6, ECF No. 77–1. Sometime during the early 1970s, Dr. Cooper sent Ms. Wiseman a letter from Lilly describing the dangers of DES. Pl.'s 56.1 ¶ 4.

Plaintiff alleges that as a result of her *in utero* exposure to DES, she eventually developed an array of physical and psychological injuries. *Id.* ¶ 4. Plaintiff currently resides in Texas, and has lived there for her entire life, with the exception of an eleven-year period during which she lived in South Africa. Lilly's 56.1 ¶ 6.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir.2002) (citations omitted). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.,* 234 F.3d 92, 97 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

When determining whether any material facts are in dispute, the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.]" *Marvel Characters,* 310 F.3d at 286 (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000)). To defeat a properly supported motion for summary judgment, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (internal quotation omitted) (emphasis in original). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. Mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment. *See Shannon v. N.Y. City Transit Auth.,* 332 F.3d 95, 99 (2d Cir.2003). The nonmoving party must produce "significant probative evidence" demonstrating that a factual dispute does in fact exist; otherwise, summary judgment is appropriate. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505

(citation omitted). In order to establish a material issue of fact, the nonmovant need only provide "sufficient evidence supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the parties' differing versions of the truth at trial." *Id.* at 248–49, 106 S.Ct. 2505 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## B. Texas Products Liability Law

The parties agree that Texas law governs plaintiff's product liability claims. *See* Mem. of Law in Supp. of Lilly's Mot. for Summ. J. ("Lilly Mem.") at 4, ECF No. 77–2; Mem. of Law in Supp. of Pl.'s Opp'n to Lilly's Mot. for Summ. J. ("Pl.'s Mem.") at 1, ECF No. 77–10. The parties disagree, however, as to whether Texas law requires plaintiff to identify the specific manufacturer of the DES her mother ingested, or if Texas law is instead receptive to market share liability.[2] As discussed below, I agree with defendants that Texas products liability law requires plaintiff to identify a specific DES manufacturer.

"In Texas, it is a fundamental principle of traditional products liability law … that the plaintiffs must prove that the defendants supplied the product which caused the injury." *In re Fibreboard Corp.*, 893 F.2d 706, 711 (5th Cir.1990) (quoting *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex.1989)); *see also Quigley Co. v. Calderon*, No. 08–01–00346–CV, 2003 WL 77256, at *3, 2003 Tex.App. LEXIS 221, at *7 (Tex.App. El Paso Jan.

10, 2003); *Hicks v. Charles Pfizer & Co.*, 466 F.Supp.2d 799, 803 (E.D.Tex.2005). In other words, "[i]t is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex.1996). In light of this general rule, defendants argue that, absent plaintiff's ability to identify the specific manufacturer of the DES that Ms. Wiseman ingested, they are entitled to summary judgment as a matter of law. *See* Lilly Mem. at 5–6.

In response, plaintiff argues that despite this general rule, Texas has indicated a willingness to adopt market share liability in the right factual situation. Pl.'s Mem. at 5–7. In support of this proposition, plaintiff points to the following language from the Supreme Court of Texas's decision in *Gaulding:* "We are not to be construed as approving or disapproving alternative liability, concert of action, enterprise liability, or market share liability in an appropriate case. We do, however, hold that these theories do not apply to the facts of this case." 772 S.W.2d at 71. Indeed, rather than categorically rejecting the theory of market share liability, the *Gaulding* Court instead found that "that no variation of market share liability could be applied rationally and fairly on the [asbestos-related] facts of this case." *Id.* According to plaintiff, this means that Texas's willingness to adopt market share liability remains an unsettled question of law, and one that this Court must attempt to answer.[3] Pl.'s Mem. at 3.

---

**2.** In order to relieve plaintiffs of the burden of ascertaining with certainty which drug company manufactured the DES responsible for their individual injuries, some states have adopted market share liability, by which liability is predicated upon a manufacturer's DES market share for the year in which a given plaintiff was born. *See, e.g., Hymowitz*

*v. Eli Lilly & Co.*, 73 N.Y.2d 487, 541 N.Y.S.2d 941, 539 N.E.2d 1069 (1989).

**3.** If the recognition of market share liability by Texas law was indeed unsettled, it would be incumbent upon me to undertake a two-step process to predict how New York courts think that Texas courts would rule on this question. *Rogers v. Grimaldi*, 875 F.2d 994,

Plaintiff's protestation notwithstanding, it is clear that Texas law does not recognize market share or any other theory of alternative liability. Although no Texas court has specifically dealt with the application of market share liability to DES cases, courts have confirmed that Texas has not adopted market share liability theory for product liability actions.

After *Gaulding*, the Supreme Court of Texas has, on one occasion, assumed for the sake of argument that Texas law is receptive to alternative liability. *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 802 (Tex.1994) ("*Assuming without deciding* that Texas law encompasses the theory of alternative liability or the other theories of collective liability urged by the plaintiffs, the plaintiffs still have the preliminary burden of proving by a preponderance of the evidence that [the deceased] was exposed to the allegedly harmful product ....") (emphasis added); *see also Hupp v. Rose*, No. 01–03–01252–CV, 2005 WL 90957, at *3, 2005 Tex.App. LEXIS 314, at *7 (Tex.App. Houston 1st Dist. Jan. 13, 2005) ("*Assuming without deciding* that Texas has adopted the alternative liability theory, [plaintiff] never asserted such a theory in his pleadings or in the jury charge.") (emphasis added). However, no post-*Gaulding* Texas court has expressly adopted market share or any other form of alternative liability.

Indeed, *In re Fibreboard Corp.* the Fifth Circuit confirmed that the requirement under Texas law that "plaintiffs must prove that the defendant supplied the product which caused the injury," *Gaulding*, 772 S.W.2d at 68, refers to defendant "individuals, not groups," 893 F.2d at 711. Ac-

cordingly, in *Cimino v. Raymark Industries, Inc.*, the Fifth Circuit rejected a district court's application of collective liability theory to asbestos litigation under Texas law. 151 F.3d 297, 313 (5th Cir. 1998). Similar to plaintiff's argument here, the district court in *Cimino* had applied collective liability theory on the basis of the passage in *Gaulding* that "[w]e are not to be construed as approving or disapproving alternative liability, concert of action, enterprise liability, or market share liability in an appropriate case." *Id.* at 313 (quoting 772 S.W.2d at 71). In rejecting application of collective liability theory, the Fifth Circuit stated that "[w]e know of no Texas appellate decision which ... has even approved of in dicta, much less adopted, the theories of alternative liability, concert of action, enterprise liability, or market share liability which *Gaulding* states it was not approving or disapproving." *Id.* at 313–14 (internal quotations omitted). Contrary to plaintiff's assertion that the Fifth Circuit rejected alternative liability theories in *Cimino* "simply because the parties did not raise [them]," Pl.'s Mem. at 5, the court made it clear that it was "compelled to reject the district court's conclusion for ... several independently sufficient reasons," including that "under Texas personal injury products liability law causation and damages are determined respecting plaintiffs as individuals, not groups," 151 F.3d at 313 (internal quotations omitted).

More recently, and in the context of a pharmaceutical products liability action, a decision from the Eastern District of Texas confirmed that "Texas state courts have not adopted the theories of alternative liability, concert of action, enterprise liability,

---

1002 n. 10 (2d Cir.1989) ("The two-step process was given its well-known formulation when Judge Friendly stated that our Court's task is 'to determine what the New York courts would think the California courts

would think on an issue about which neither had thought.' ") (citations omitted). However, as discussed *infra*, it is clearly settled that Texas law does not recognize market share liability in product liability actions.

or market share liability." *Hicks v. Charles Pfizer & Co.*, 466 F.Supp.2d at 804 (citing *Cimino*, 151 F.3d at 314; *Spring Branch Indep. Sch. Dist. v. NL Indus.*, No. 01–02–01006–CV, 2004 WL 1404036, 2004 Tex.App. LEXIS 5577 (Tex.App. Houston 1st Dist. June 24, 2004) (affirming summary judgment for defendant where plaintiff could not establish that defendant's specific product caused injury)). The *Hicks* court therefore went on to hold that "[t]o establish Pfizer's liability … it is not enough for the [plaintiffs] merely to show that Pfizer distributed [oral polio vaccine] in Texas in 1962. Instead, the plaintiffs must adduce evidence that Pfizer supplied the specific doses that allegedly caused [plaintiff's] injury." *Id.*

It is therefore clear that Texas law has declined to adopt market share or other alternative liability theories for product liability suits. Accordingly, the general identification rule under Texas law applies here and, in order to sustain her action, plaintiff must identify the specific manufacturer of the DES to which she was exposed.

## C. Plaintiff's Attempt to Identify a Manufacturer

Plaintiff argues that defendants are nonetheless not entitled to summary judgment because she has produced new evidence that Lilly is the manufacturer of the DES to which she was exposed. Pl.'s Mem. at 7–9. Plaintiff's evidence that Lilly is the specific manufacturer, which was produced only after Lilly served plaintiff with its motion for summary judgment, includes: (1) an affirmation by Ms. Wiseman; and (2) a two-sentence summary of a telephone conversation between plaintiff's counsel and Ken Turner, the owner of the

pharmacy where Ms. Wiseman filled her DES prescription. Telephone conversation log ("Turner log"), Shainwald Aff. Ex. C. As explained below, neither of these newly produced documents creates a genuine issue of material fact.

### 1. *Wiseman Affirmation*

Plaintiff submitted a first Response to Defendants' Uniform Preliminary Request for Information ("RUPRI")[4] to defendants on May 5, 2010. Reply Mem. in Further Supp. of Lilly's Mot. for Summ. J. ("Lilly Reply") at 4, ECF No. 77–13. In response to a question in the RUPRI about which drug company manufactured the DES to which she was exposed, plaintiff responded that this information was "[t]o be supplied when and if available." *Id.* On November 18, 2010, the day before the deposition of plaintiff and Ms. Wiseman, plaintiff submitted an Amended RUPRI. Aff. of Adam B. Michaels in Supp. of Lilly's Mot. for Summ. J. ("Michaels Aff.") Ex. A, ECF No. 77–4. Plaintiff's response again stated that information concerning the identity of a specific DES manufacturer would "be supplied when and if available." *Id.* at 5. At deposition the next day, Ms. Wiseman was twice asked if she knew which company manufactured the DES that she took, to which she twice answered "no." Dep. of Annie Marie Wiseman at 44:8, 23, Michaels Aff. Ex. B.

On January 5, 2012, after Lilly served plaintiff with the instant motion for summary judgment, plaintiff executed a Second Amended RUPRI. Shainwald Aff. Ex. A. In it, plaintiff now states that she is able to identify the manufacturer of the DES to which she was exposed as "Eli Lilly and Company." *Id.* at 5. The following day, Ms. Wiseman executed an affir-

4. A RUPRI is a verified discovery document used in DES litigations to describe a plain-

tiff's alleged injuries.

mation, in which she states that the DES she took "was manufactured by [Lilly]." Wiseman Affirm. ¶ 6. Her affirmation also states that in the 1970s, Dr. Cooper sent Ms. Wiseman a letter from Lilly describing the dangers of DES. *Id.* ¶ 7; Pl.'s 56.1 ¶ 4.

Plaintiff does not provide any direct evidence as the basis for her mother's sudden reversal of her prior testimony. Instead, plaintiff invokes *Hicks v. Charles Pfizer & Co.*, where, in addition to confirming that Texas law has rejected market share liability in products liability actions, *supra*, the Eastern District of Texas allowed the plaintiff's action to survive summary judgment on the basis of newspaper articles from 1962 that identified Pfizer as the manufacturer of the drug at issue. 466 F.Supp.2d at 804, 810–11. The *Hicks* court admitted the articles on the basis of Federal Rule of Evidence 807,[5] finding, *inter alia*, that "the four newspaper articles offered by [plaintiffs] evince particularized guarantees of trustworthiness."[6] *Id.* at 808. Plaintiff argues that her mother's revised testimony should likewise be

found sufficient to defeat summary judgment. *See* Pl.'s Mem. at 8–9.

However, Ms. Wiseman's recanting of her own prior deposition testimony is rather more akin to a violation of the "sham affidavit" doctrine, which holds that "a party may not, in order to defeat summary judgment, create a material issue of fact by submitting an affidavit disputing his own prior testimony." *RBFC One, LLC v. Zeeks, Inc.*, 367 F.Supp.2d 604, 616 (S.D.N.Y.2005) (quoting *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991)); *see also Hayes v. N.Y. City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir.1996).

Unlike the decades-old newspaper articles in *Hicks*, Ms. Wiseman's testimonial about-face includes no similarly particularized guarantees of trustworthiness. Ms. Wiseman's affirmation is instead wholly conclusory and lacks any evidentiary basis for suddenly contradicting her prior testimony about the manufacturer of the DES she took.[7] With regard to Ms. Wiseman's

---

**5.** Rule 807 is the residual hearsay exception, which allows for the admission of a hearsay statement when:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed.R.Evid. 807(a). The rule also requires that "the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars ... so that the party has a fair opportunity to meet it." Fed. R.Evid. 807(b). Further, the residual exception is to "be used very rarely, and only in exceptional circumstances." *Mitchell v. Hoke*, 930 F.2d 1, 2 (2d Cir.1991) (discussing Fed.R.Evid. 803(24), the antecedent to Rule

807); *see also United States v. Phillips*, 219 F.3d 404, 419 n. 23 (5th Cir.2000).

**6.** The *Hicks* court delineated five such guarantees: (1) "the statements in question were made long before any motive to fabricate arose," (2) "[h]ad Pfizer not manufactured the vaccine, it is likely that the true manufacturer ... would have stepped forward to correct the misinformation contained in the newspaper articles," (3) "[t]he risk of mistake or dishonesty is reduced given the multiple publications by different sources," (4) "the newspaper articles were written and published nearly contemporaneously with the events in question," and (5) "the issue of product identification presented in this case is a 'binary event': either Pfizer supplied the doses, or it did not." 466 F.Supp.2d at 808–09.

**7.** "An affidavit is conclusory if, for example, its assertions lack any supporting evidence or are too general." *Cusamano v. Sobek*, 604 F.Supp.2d 416, 456 (N.D.N.Y.2009).

claim that her doctor forwarded her a letter from Lilly about DES, plaintiff offers no reason why this letter was not mentioned until after Lilly served its motion for summary judgment. Further, the fact that Lilly sent Dr. Cooper a letter about DES in the 1970s says nothing about which manufacturer's DES was stocked at Rand Pharmacy in 1956. In sum, plaintiff provides no reason to consider her mother's affirmation as anything other than an impermissible attempt to create an issue of fact by contradicting her own sworn prior testimony. As such, plaintiff's analogy to the *Hicks* decision is inapposite,[8] and Ms. Wiseman's affirmation fails to raise a genuine issue of material fact.

### 2. *Turner Telephone Log*

In a last attempt to defeat summary judgment, plaintiff submitted the Turner log, a two-sentence summary of a telephone conversation between plaintiff's counsel and the owner of Rand Pharmacy, where Ms. Wiseman filled her DES prescription. The conversation log reads, in pertinent part, as follows: "Spoke with Ken Turner, the owner of the Pharmacy ... where [Ms. Wiseman] purchased the DES she was prescribed during her pregnancy with [plaintiff]. He stated that his drugstore stocked [Lilly's] DES." Turner Log. Plaintiff again argues that the Court should view the Turner log in the same way that the *Hicks* court viewed the 1962 newspaper articles. Pl.'s Mem. at 8–9. However, this log is inadequate evidence that Lilly, or any other specific manufacturer, is the manufacturer of the DES plaintiff's mother ingested, and is therefore insufficient to create a genuine issue of material fact.

Federal Rule of Civil Procedure 56 requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). Additionally, a nonmoving party cannot defeat summary judgment by relying only on conclusory statements. *L & L Started Pullets, Inc. v. Gourdine*, 762 F.2d 1, 3–4 (2d Cir.1985). Finally, a plaintiff cannot rely on "insupportable allegations made by affidavit" to defeat summary judgment. *Cornett v. Sheldon*, 894 F.Supp. 715, 724 (S.D.N.Y. 1995) (citing *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983)); *see also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 451 (2d Cir.1999) (affirming district court's decision to disregard allegations made by the plaintiff's co-worker in her racial discrimination case because the affidavit in question lacked the "concrete particulars" that were necessary to support his allegations). The Turner log fails to create a genuine issue of material fact for several reasons.

First, the Turner log is not even presented in the form of a sworn affidavit from Turner; rather, it is merely plaintiff's counsel's personal notes about a telephone conversation, which renders it double hearsay. Contrary to plaintiff's assertion that the Turner log is trustworthy "because the pharmacist has no interest in the outcome of this litigation and therefore no reason to fabricate such information," Pl.'s Mem. at 8, the log itself includes no "circumstantial guarantees of trustworthiness," Fed.R.Evid. 807(a)(1). Unlike the third-party newspaper articles in *Hicks*, plaintiff's counsel's barebones log includes no factual guarantees that in-

---

**8.** It also bears noting that whereas the newspaper articles in *Hicks* were accepted by the court as an admissible form of hearsay, Ms. Wiseman's affirmation does not appear to be hearsay, as such, which further attenuates the relevance of *Hicks* here.

dependently support its trustworthiness. *Cf. supra* note 6.

Second, there is nothing to suggest that Turner's statement to plaintiff's counsel was based on his personal knowledge, nor is there an adequate showing that he is competent to testify about which drug manufacturer's DES was used to fill Ms. Wiseman's prescription in 1956. For instance, the log fails to specify any concrete particulars, such as whether Rand Pharmacy stocked Lilly's DES exclusively, or during what period of time Lilly's DES was stocked. Rather, there is simply a conclusory statement that the drugstore stocked Lilly's DES.

Lastly, even an affidavit with non-conclusory statements may, in some cases, be insufficient to create a factual issue when: (1) it constitutes almost the sole or exclusive basis for a disputed issue of fact in the case; and (2) it is so lacking in credibility that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant because the testimony is incomplete or replete with inconsistencies and improbabilities. *Cusamano v. Sobek*, 604 F.Supp.2d 416, 456 (N.D.N.Y.2009) (citing *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554–55 (2d Cir.2005)). Here, Turner's hearsay claim to know which company manufactured the drug that plaintiff was exposed to is unsupported by any evidence at all; yet, it is presumably the sole basis on which plaintiff and Ms. Wiseman now claim to identify Lilly's DES. Further, given the log's curt and un-detailed conclusion that "[Turner's] drugstore stocked [Lilly's] DES," no reasonable jury could find for plaintiff on the basis of such incomplete testimony. Therefore, the Turner telephone log is also insufficient to create a genuine issue of material fact in this case.

## III. CONCLUSION

In sum, I conclude that the Wiseman affirmation and Turner telephone log are insufficient to create a genuine issue of material fact regarding plaintiff's obligation, under Texas law, to identify the specific manufacturer of the DES to which she was exposed. Therefore, I respectfully recommend that defendants' motions for summary judgment be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of the date of issuance of this Report and Recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); F.R.C.P. 6(a), 72.

SO ORDERED.

September 10, 2012